IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| YOMAYRA DELGADO CARABALLO, personally and in representation of her minor children B.O.G.D. and M.G.D.; JUAN RAMÓN DELGADO CARABALLO<br><br>Plaintiffs<br><br>v.<br><br>HOSPITAL PAVIA HATO REY, INC.; or alternatively, John Doe Corporation d/b/a HOSPITAL PAVIA HATO REY; APS HEALTHCARE PUERTO RICO, INC., or alternatively, Jane Doe Corporation d/b/a APS HEALTHCARE PUERTO RICO; DR. MARJORIE ACOSTA GUILLOT; DR. NILSA LOPEZ; JOHN DOES 1, 2 and 2; A, B and C CORPORATIONS; INSURANCE COMPANIES A, B, C and D<br><br>Defendants | CIVIL ACTION NO.: 14-1738 (DRD) |

**INITIAL SCHEDULING CONFERENCE MEMORANDUM**

TO THE HONORABLE COURT:

**Co-defendant**, APS HEALTHCARE PUERTO RICO, INC. (hereinafter "APS"), through their undersigned attorneys hereby submit their Initial Scheduling Conference Memorandum:

APS hereby informs the Court that it duly complied with Fed. R. Civ. P. 26(a)(1), and met and conferred with counsel for all parties on 5th day of June, 2015. Pursuant to Order, Docket 36, APS submits the following:

**(a) Discussion of the parties' factual and legal contentions:**

On September 30, 2014, plaintiffs Yomayra Delgado Caraballo, personally and in representation of her minor children B.O.G.D. and M.G.D., and Juan Ramón Delgado filed the captioned Complaint against APS Healthcare Puerto Rico, Inc., Hospital Pavia and other defendants, requesting compensatory damages for alleged medical malpractice under the Emergency Medical Treatment and Active Labor Act (EMTALA) in relation to their mother's demise (Mrs. Natividad Caraballo Caraballo), which occurred on **October 4, 2012**. **Docket 1, ¶ 21.** Plaintiffs invoke, in the alternative, diversity jurisdiction under 28 U.S.C. § 1332, and supplemental jurisdiction under 28 U.S.C. § 1367 over claims pursuant to Art. 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141, 5142.

According to the Plaintiffs' pleadings, defendant APS is a corporation which is the "owner and/or operator of a mental health clinic with capacity to treat emergency psychiatric conditions, known as APS Caguas, Puerto Rico". Docket 1, ¶ 7.[1] However, EMTALA applies only and exclusively to any hospital that (1) participates in the federal Medicare health insurance program and (2) operates an emergency department. 42 U.S.C. § 1395dd(e)(2), 42 C.F.R. § 489.24(b). From the definition provided by Plaintiffs, APS is not in any manner a hospital. Thus, the lack of this predicate allegation is fatal and dispositive of the case at bar. No federal jurisdiction ensues.

---

[1] This representation is incorrect as a matter of fact. APS Healthcare Puerto Rico is a Managed Behavioral Healthcare Organization, which provides services under the Puerto Rico Health Plan. The owner of the referred APS Clinic of Caguas is another entity. However, for purposes of the dismissal request this representation is deemed true.

Further, as discussed below in detail, EMTALA does not create a cause of action. EMTALA is designed to assure that any person visiting a covered hospital's emergency room is screened for an emergency medical condition and is stabilized if such a medical condition exists. <u>Del Carmen Guadalupe v. Negrón Agosto</u>, 299 F. 3d 15, 19 (1st Cir. 2002). Inadequate screening or screening that leads to an incorrect diagnosis, does not constitute the basis for an EMTALA claim. <u>Kenyon v. Hosp. San Antonio</u>, 2013 WL 210273 (D.P.R. January 17, 2013).

This is precisely the nature of the averments exerted by Plaintiffs. On October 1, 2012, Mrs. Caraballo was taken to the defendant Hospital Pavia Hato Rey, evaluated by a licensed psychiatrist, Dr. Marjorie Acosta, and was subsequently "deemed not to need psychiatric hospitalization". Docket 1, ¶ 17. She was discharged with medications and a referral for outpatient treatment. **Docket 1, ¶ 17**. These facts taken as true, failed to state a claim upon which relief may be granted, pursuant to the caselaw above mentioned. Consequently, EMTALA claims must be dismissed with prejudice as a matter of law also under these grounds.

In any event, plaintiffs attempt to rise diversity jurisdiction is also meritless. Plaintiffs violate the complete diversity rule. That is "diversity jurisdiction does not exist unless each defendant is of a different State from each plaintiff". <u>See Owen v. Equip & Erection Co. v. Kroger</u>, 437 U.S. 365, 373 (1978). Yomayra and Juan Ramón Delgado are domiciled in Puerto Rico, where all defendants reside or have their place of business. The fact that minors B.O.G.D. and M.G.D purportedly reside outside of Puerto Rico, does not deny the fact the parent acting on their behalf resides in Puerto Rico.

Finally, since this Court has no federal original jurisdiction or diversity jurisdiction, the pendent state claims should be dismissed as well. United Mine Workers of Am. v. Gibbs, 383 US 715, 726 (196). In the event this Court entertains the local claims, note the Court they are time barred under the one year statute of limitations. Mrs. Caraballo's death occurred on **October 4, 2012**, and the complaint was filed on **September 30, 2014**.

Pursuant to FRCP 12(b)(6), Defendant APS requests the Court to dismiss the EMTALA and the state law claims with prejudice. Only for the exclusive purposes of this motion to dismiss, the facts averred at the complaint should be deemed as true, and defendants deny any violation of law or any wrongdoing. Defendants make full reservation of rights.

### A.     **Standard for Dismissal**

A party may move the Court to dismiss the case for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief can be granted under FRCP 12(b)(6). The well-settled standard provides that in passing on a motion to dismiss for failure to state a cause of action, a court must accept as true the well-pleaded factual allegations of the complaint and indulge all reasonable inferences in favor of plaintiff. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993).  The pleading requirement, however, is "not entirely a toothless tiger." See The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1988).  "The threshold [for stating a claim] may be low, but it is real." See Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

**B.     Lack of subject-matter jurisdiction under EMTALA**

**1.     APS is not a Hospital under EMTALA**

Congress enacted EMTALA, commonly known as the "Patient Anti-Dumping Act," in response to the growing concern about the provision of adequate medical services to individuals, particularly the indigent and the uninsured, who seek care from hospital emergency rooms. Congress was concerned that hospitals were dumping patients who were unable to pay for care, either by refusing to provide emergency treatment to these patients, or by transferring the patients to other hospitals before the patients' conditions stabilized. See H.R.Rep. No. 241, 16 99th Cong., 1st Sess., Part I, at 27 (1985), reprinted in 1986 U.S.Code Cong. & Admin. News 17 579, 605.

EMTALA, 42 U.S.C.S. § 1395dd, imposes some limited substantive requirements on emergency rooms of hospitals participating in the federal Medicare program. Specifically EMTALA requires (1) that a participating hospital afford an appropriate medical screening to all persons who come to its emergency room seeking medical assistance, and (2) if an emergency medical condition exists, the participating hospital must render the services that are necessary to stabilize the patient's condition unless transferring the patient to another facility is medically indicated and can be accomplished with relative safety. 42 U.S.C.S. § 1395dd(d)(2)(A).  EMTALA created a private cause of action for damages for violations of the Act against "participating hospitals." 42 U.S.C.S. § 1395dd(d)(2).

The black letter law establishes that "[t]he term "participating hospital" means a hospital that has entered into a provider agreement under section 1866 [42 USCS § 1395cc]". 42 U.S.C. § 1395dd(e)(2).

Under EMTALA, "hospital" means an institution which:

   (1) is primarily engaged in providing, by or under the supervision of physicians, to inpatients (A) diagnostic services and therapeutic services for medical diagnosis, treatment, and care of injured, disabled, or sick persons, or (B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons;

   (7) [and,] in the case of an institution in any State in which State or applicable local law provides for the licensing of hospitals, (A) is licensed pursuant to such law or (B) is approved, by the agency of such State or locality responsible for licensing hospitals, as meeting the standards for such licensing.... (Our emphasis.)

The First Circuit in <u>Rodríguez v. American International Insurance Co.</u>, 402 F3d 45, 49 (1st Cir. 2005), addressed the present issue of what constitutes a hospital under EMTALA. Upon examining the above definitions, the First Circuit reversed the District Court, which ruled that a "CDT", which hosted a 24-hour emergency room, was governed by the rules of EMTALA. The First Circuit held that "federal courts are not free to ignore the letter of the law in favor of the spirit of the law". <u>Id</u>. at 49. The First Circuit underscored that "**EMTALA does not apply to all healthcare facilities; it applies only to participating hospitals with emergency departments**". Id at 48.  (Emphasis added). See also <u>Aponte-Colon v. Mennonite Gen. Hosp., Inc</u>., 2011 U.S. Dist. LEXIS 64118 (D. P.R. 2011);  <u>Rosa-Rodriguez v. San Cristobal-Villalba</u>, 2009 U.S. Dist. LEXIS 40078  (D. P.R. 2009).

To buttress our argument, the Florida District Court in <u>Dearmas v. Av-Med</u>, Inc., 814 F. Supp 1103, 1108 (S.D. Fla. 1993), specifically confronted by the same controversy at bar held the following:

> The civil enforcement provision, § 1395dd(d)(2)(A), "is explicitly limited to actions against participating hospitals" and does not provide for a private cause of action against physicians. Furthermore, § 1395dd does not create "a sweeping federal cause of action with respect to what are traditional state-based claims of negligence and malpractice."
>
> Av-Med argues that § 1395dd only applies to a hospital's duty to treat patients and not to a HMO. This Court agrees. **There is no authority for the Plaintiffs' position that § 1395dd applies to HMO's, or similar health care plan providers. Based on legislative intent and the plain wording of § 1395dd, it is this Court's conclusion that no cause of action exists against Av-Med for a violation of § 1395dd.**

According to Plaintiffs' pleadings, defendant APS is a corporation which is the "owner and/or operator of a mental health clinic with capacity to treat emergency psychiatric conditions, known as APS Caguas, Puerto Rico". Docket 1, ¶ 7. This representation is incorrect as a matter of fact. APS Healthcare Puerto Rico is a Managed Behavioral Healthcare Organization, which provides services under the Puerto Rico Health Plan. The entity that owns the mentioned clinic is another entity. Nonetheless, even if we deem true these incorrect premises, APS in no manner falls within the EMTALA definition of "hospital". APS is certainly not licensed under state law as a hospital, nor has any providers' agreement with Puerto Rico's Health Department or CRS under this concept. Nor it was alleged in the Complaint. Thus, no federal jurisdiction under EMTALA arises, and the Complaint must be dismissed with prejudice.

Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims that gave it original jurisdiction are

dismissed. See 28 USC §1367 (c)(3); Camelio v. Am. Fed'n, 137 F3d 666, 672 (1st Cir. 1998). If all federal claims are dismissed prior to trial, then the state law claims should be dismissed as well. United Mine Workers of Am. v. Gibbs, 383 US 715, 726 (196); Rodriguez v. Doral Mortg. Corp., 57 F3d 1168, 177 (1st Cir. 1990).

### 2. Inadequate Screening or Incorrect Diagnosis is not Actionable under EMTALA

A hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints. See Baber v. Hospital Corp. of Am., 977 F.2d 872, 879 (4th Cir. 1992); Gatewood v. Washington Healthcare Corp., 290 U.S. App. D.C. 31, 933 F.2d 1037, 1041 (D.C. Cir. 1991). The essence of this requirement is that there be some screening procedure, and that it be administered even-handedly. Correa v. Hosp. San Francisco, 69 F.3d 1184, 1192 (1st Cir. 1995).

EMTALA does not create a cause of action for medical malpractice. See Gatewood, 933 F.2d at 1041. Therefore, a refusal to follow regular screening procedures in a particular instance contravenes the statute, see Baber, 977 F.2d at 879, but faulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute. See Correa, supra, 69 F.3d at 1192 (1st Cir. 1995). Brooks v. Maryland Gen. Hosp., 996 F.2d 708, 711 (4th Cir. 1993).

"Congress deliberately left the establishment of malpractice liability to state law...." Id.; see also Loaisiga Cruz v. Hosp. San Juan Bautista, 681 F.Supp.2d

130, 135 n.2 (D.P.R. 2010) ("The Court notes that, even if Plaintiff were to allege that the diagnosis of a fractured vertebrae was incorrect, such a misdiagnosis would not create a cause of action under EMTALA, but rather, would create a cause of action under the applicable state malpractice law."). EMTALA is designed to assure that any person visiting a covered hospital's emergency room is screened for an emergency medical condition and is stabilized if such a medical condition exists. Del Carmen Guadalupe v. Negron Agosto, 299 F.3d 15, 19 (1st Cir. 19 2002). EMTALA, then, is "'merely an entitlement to receive the same treatment that is accorded to others similarly situated.'" Kenyon v. Hosp. San Antonio, 2013 WL 210273 21 (D.P.R. January 17, 2013) (quoting Jones v. Wake County Hosp. Sys., Inc., 786 F.Supp. 538, 22 544 (E.D.N.C. 1991). "'[I]nadequate screening or screening that leads to an incorrect diagnosis" Kenyon, 2013 WL 210273 *5 (citation omitted) forms the basis of malpractice claims—not EMTALA claims. "The essence of [the duty to screen]" under EMTALA is not that screening be administered perfectly, but "that there be some screening procedure, and that it be administered even-handedly." Id. 3

On October 1, 2012, Mrs. Caraballo was taken to the defendant Hospital Pavia Hato Rey. Docket 1, ¶ 13. According to the Complaint, the initial triage assessment was interrupted when Mrs. Caraballo refused to have her vital signs taken. Her daughter, Mrs. Delgado, had to obtain an order from the local Court pursuant to Law 408 for Involuntary Civil Commitment Procedures and/or Referral to Appropriate Level of Care based on Patient Needs. Docket 1, ¶ 14. Afterwards, she returned to the Hospital with the order, where –as admitted by Plaintiffs— a medical doctor, "specialist in psychiatry", Dr. Acosta evaluated Mrs. Caraballo. Docket 1, ¶ 8

and 16. According to Plaintiffs' allegations, the hospital records show as a matter of fact "Dr. Acosta's findings after evaluation", which were "patient suffered from anxiety, under productivity, psychomotor retardation and insolation, [and] that Mrs. Caraballo denied suicide ideas". Docket 1, 17. Pursuant to this evaluation and these findings, Dr. Acosta "deemed [the patient] not to need psychiatric hospitalization at the time". Docket 1, 17. She "was discharged with medications as prescribed and a referral for outpatient evaluation on October 3, 2012, two days later, at APS Caguas (hereafter, "APS"), in Caguas, P.R.".[2] Docket 1, ¶ 17. .

Note the Court that the above mentioned facts showed that, as conceded by plaintiffs, Mrs. Caraballo was <u>evaluated by a psychiatrist</u>. Her evaluation was memorialized in the hospital records, as well as her clinical findings. She was discharged with medications and an outpatient referral. This, in no manner constitutes a claim under EMTALA. The duty to stabilize under EMTALA attaches after a hospital "determines that the individual has an emergency medical condition." 42 U.S.C. § 1395dd(b)(1). "Thus, the plain language of the statute dictates a standard requiring actual knowledge of the emergency medical condition by the hospital staff." <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 883 (4th Cir. 11 1992); <u>see also Eberhardt v. City of Los Angeles</u>, 62 F.3d 1253, 1259 (9th Cir. 1995) ("As the text of the statute clearly states, the hospital's duty to stabilize the patient does not arise until the hospital first detects an emergency medical condition."); <u>Brooks v. Maryland Gen. Hosp., Inc.</u>, 14 996 F.2d 708, 711 (4th Cir. 1993) ("EMTALA's role [is] imposing on a hospital's emergency room the duty to screen all patients as any

---

[2] We have already discussed that APS Caguas clinic does not fall within the "hospital" definition of EMTALA. Therefore, no further discussion is warranted on what happened after October 1, 2012 for EMTALA purposes.

paying patient would be screened and to stabilize any emergency condition discovered." (emphasis added)); Alvarez v. Vera, 2006 WL 2847376 at *6 17 (D.P.R. Oct. 2, 2006) ("A hospital must have had actual knowledge of the individual's unstabilized emergency condition if an EMTALA claim is to succeed."). In other words, EMTALA "does not hold hospitals accountable for failing to stabilize conditions of which they are not aware, or even conditions of which they should have been aware." Vickers v. Nash Gen. Hosp., Inc., 78 F.3d 139, 145 (4th Cir. 1996) (emphasis added).

Pursuant to the above, even taking as true that Hospital Pavia evaluated and released Mrs. Caraballo without uncovering any underlying emergency condition, this factual scenario does not constitute grounds for an EMTALA claim. Plaintiffs may seek a medical malpractice claim for the alleged failure to uncover an emergency condition, but such failure to diagnose does not violate EMTALA. From the factual averments of the Complaint, it is self-evident that Mrs. Caraballo received the appropriate screening protected under EMTALA. The Court must refuse all other repetitious and conclusory allegations exerted by Plaintiffs, claiming she did not. Ashcroft v. Iqbal, 565 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

### C. Diversity Jurisdiction

In order to maintain an action in federal court based upon diversity jurisdiction, plaintiffs must be diverse from the defendants in the case. Colon v. Blades, 570 F. Supp. 2d 204, 213 (D.P.R. 2008) (quoting Gorfinkle v. U.S. Airways, Inc., 431 F.3d 19, 22 (1st Cir. 2005)). In other words, diversity jurisdiction only exists

when plaintiff and defendant are citizens of different states. Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89, 126 S. Ct. 606, 163 L. Ed. 2d 415 (2005). **"[D]iversity jurisdiction does not exist unless each defendant is of a different State from each plaintiff"**. See Owen v. Equip & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978). "The complete diversity rule 'is most inflexibly applied at the time of filing, for it has long been settled that "the jurisdiction of the court depends upon the state of things at the time of the action brought."'" Inter Am. Builders Agencies Co. v. Sta-Rite Indus., Inc., 602 F. Supp. 2d 306, 308 (D.P.R. 2009) (quoting In re Olympic Mills Corp., 477 F.3d 1, 8  [*89]  (1st Cir. 2007) (quoting Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 570, 124 S. Ct. 1920, 158 L. Ed. 2d 866 (2004)).

Yomayra and Juan Ramón Delgado are domiciled in Puerto Rico, where all defendants reside or have their place of business. Thus, Plaintiff failed to properly invoke diversity jurisdiction, and should be denied by the Court. The fact that minors B.O.G.D. and M.G.D purportedly reside in Massachusetts, does not deny the fact the parent acting on their behalf resides in Puerto Rico. Nor cures this obvious jurisdictional deficiency.

**C.    Local Claims are time barred**

Tort claims under article 1802 of the P.R. Civil Code, 31 L.P.R.A. § 5141, are subject to the one-year statute of limitations provided by article 1868(2) of the Civil Code, P.R. Laws Ann. tit. 31, § 5298(2). A cause of action under article 1802 accrues - and the prescriptive period set by article 1868(2) therefore begins to run - when the injured party knew or should have known of the injury and of the likely identity of the tortfeasor. See Colon-Prieto v. Geigel, 115 D.P.R. 232, 243 (1984). As

noted above, Mrs. Caraballo passed away on October 4, 2012, and the Complaint was filed on September 30, 2014. Almost two years have accrued, and Plaintiffs failed to toll the statute of limitation in the manners conceived by article 1873 of the Civil Code. Therefore, local claims should be dismissed with prejudice as to the adults and as to minors, as set forth before, the court lacks diversity jurisdiction to consider any claim on their behalf.

**(b)     Listing of proposed uncontested facts:**

1.   Yomayra and Juan Ramón Delgado are domiciled in Puerto Rico.

2.   Mrs. Natividad Caraballo passed away on October 4, 2012.

3.   The instant Complaint was filed on September 30, 2014.

**(c)     Listing of witnesses (fact and expert) summarizing the nature of their expected testimony:**

APS has not determined any witnesses (fact and/or expert) at this moment. APS does acknowledge that codefendants Marjorie Acosta, MD and Nilza López, MD, as well as plaintiffs, may have relevant information in the captioned case.  Shall be timely announced.

**(d)     Listing of documentary evidence:**

APS has provided the medical record form the aforementioned Caguas clinic. Any other document shall be timely announced.

**(e)     Itemization of all the Discovery (including interrogatories, requests**

A Discovery Schedule has been stipulated by all parties. APS notified to the Plaintiffs a First Set of Interrogatories and First Request for Production of Documents, on February 27, 2015.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 8th day of June 2015.

I CERTIFY that on this same date, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, which will send an automatic electronic notification of such filing to all counsels of record.

S/ HARRY ANDUZE MONTAÑO
USDC No. 114910
Attorney for Codefendant APS
1454 Fernández Juncos Ave.
San Juan PR  00909
Tel. (787) 723-7171
Fax  (787) 723-7278
E-mail handuze@microjuris.com


S/ JOSÉ A. MORALES BOSCIO
USDC No. 220614
Attorney for Codefendant APS
1454 Fernández Juncos Ave.
San Juan PR  00909
Tel. (787) 723-7171
Fax  (787) 723-7278
E-mail jmoralesb@microjuris.com