IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Yomayra Delgado Caraballo**, et al.<br><br>Plaintiffs,<br><br>v.<br><br>**Hospital Pavia Hato Rey Inc., et al.**<br><br>Defendants. | **Civil No.** 14-1738 (DRD) |

## OPINION AND ORDER

Juan Ramon Delgado-Caraballo and Yomayra Delgado-Caraballo, personally and on behalf of her minor children B.O.G.D and M.G.D. ("Plaintiffs"), are seeking damages against Hospital Pavia, Inc., Dr. Marjorie Acosta-Guillot, Dr. Nilsa Lopez, and APS Healthcare Inc. ("Defendants"). Plaintiffs allege Defendants violated the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 and § 5142. Pending before the Court are Dr. Nilsa Lopez's *Motion for Summary Judgment* (Docket No. 66), APS Healthcare Inc.'s *Motion for Summary Judgment* (Docket No. 68), and *Hospital Pavia's Motion for Summary Judgment* (Docket No. 71). For the reasons provided below, the Court hereby **GRANTS** *Hospital Pavia's Motions for Summary Judgment.*

### I.     FACTUAL BACKGROUND[1]

To comply with EMTALA, hospitals must establish internal screening procedures to follow in order to avoid patient dumping. At Hospital Pavia Hato Rey ("Pavia"), all patients that seek treatment at the Psychiatric Stabilization Unit ("PSU") are interviewed by an evaluating physician under strict confidentiality.

---

[1] The uncontested material facts will be based off Plaintiff's *Objection to Defendant Hospital Pavia Hato Rey's Statement of Uncontested Material Facts at Docket No. 71-1* (Docket No. 88).

1

¶ 26. The physician compiles clinical information both from the patient and any relatives available at the time of the interview. *Id*. Generally, Pavia follows the *Admission Process Guide* to determine if a patient meets the criteria for admission at the PSU. ¶ 34. Pavia's *Guideline for the Identification and Management of Patients who Present some Level of Suicidal Risk* is used to screen patients with risk of suicide. ¶ 35. For admission to the PSU, a patient must present at least one or more of the criteria established in section (A) of Pavia's *Admission Process Guide*. ¶ 27.

On October 1, 2012, Natividad Caraballo-Caraballo ("Patient") arrived at the PSU at Pavia with her daughter, Plaintiff Yomayra Delgado-Caraballo . ¶ 16-17. The Patient was evaluated by the triage nurse at 6:30 P.M. *Id.* The nurse noted that Patient was mildly nervous and had not been taking her medications. ¶ 18. Additionally, the nurse recorded that the Patient's visit was voluntary. ¶ 20. Nonetheless, there is an issue regarding whether Patient was evaluated at Pavia under a Law #408 order.

Dr. Marjorie Acosta-Guillot ("Acosta-Guillot"), the evaluating physician, assessed the patient and performed the medical screening examination at around 7:00 P.M. ¶ 21. Dr. Acosta-Guillot recorded that Patient was 53 years old, had a psychiatric history that included a suicide attempt one year before the visit, and presented "poor compliance or commitment to treatment, exacerbation of depressive symptoms which included anxiety, isolation. ¶ 22. Dr. Acosta-Guillot also noted that "[patient was] not suicidal, not homicidal, [and had] no hallucinations". *Id.*

Dr. Acosta-Guillot further noted, in the *Mental Exam* section of the screening sheet, that Patient had appropriate hygiene, adequate visual contact, and a logical and coherent thought process. ¶ 23. Patient was also cooperative and oriented, but showed diminished language production, was anxious, and showed psychomotor retardation. *Id*.

Dr. Acosta-Guillot diagnosed Patient with major depression according to the *Stabilization Unit's Evaluation Disposition* form. ¶ 24. However, the form contained the conclusion that Patient did not present the criteria to be admitted at the PSU. *Id.* This form was signed by both Patient and Plaintiff Yomayra

Delgado-Caraballo ("Yomayra"). ¶ 31. Dr. Acosta-Guillot testified in her deposition that Patient denied having suicidal ideas, did not present risk of suicide at the time, and thus, considering Patient's history and evaluation, she did not present the criteria for admission at the time of the evaluation. ¶ 32-33. Patient was discharged with instructions to continue taking her medications and to attend an appointment at the Defendant APS Healthcare ("APS") outpatient clinic on October 3, 2012. ¶ 25.

After being discharged from Hospital Pavia, Patient was left alone and slept by herself from October 1, 2012, to October 3, 2012. ¶ 36. On October 3, 2012, Patient's mother-in-law, with whom she had a close relationship, passed away. ¶ 38. The same day, Patient attended her appointment at the APS outpatient clinic in Caguas. ¶ 37. Patient was attended by Dr. Nilsa Lopez ("Lopez"). After Dr. Lopez evaluated Patient, Yomayra spoke with the physician and Patient. Patient was released from the APS clinic and committed suicide the next day. ¶ 39.

## II.  PROCEDURAL BACKGROUND

Patient had three children, Yomayra-Delgado Caraballo, Juan Ramon Delgado-Caraballo, and Vanessa Delgado-Caraballo. The members of the estate of Mrs. Caraballo are Yomayra, Juan Ramon, Vanessa, and widower Juan Delgado-Gonzalez. In the present complaint, only Yomayra and Juan Ramon are bringing forth Patient's survivorship EMTALA action. Juan Ramon and Yomayra, personally and on behalf of her minor children B.O.G.D and M.G.D., are only seeking personal damages. ¶ 3-6, 9-11.

On September 30, 2014, Plaintiffs filed a *Complaint* (Docket No. 1) against Defendants alleging that Pavia failed to give Patient an appropriate medical screening examination and failed to stabilize her pursuant to the requirements of EMTALA. *See* 42 U.S.C. §§1395 (a)-(c). Furthermore, Plaintiffs claim that Hospital Pavia failed to meet the accepted practices of the medical profession by not complying with a Law 408 order[2], not documenting the comprehensive risk assessment, not providing the higher level of care

---

[2] A Law 408 order is required for patients that refuse to let doctors take their vital signs for evaluation when it could be perceived that they could be a danger to themselves. *See* 24 L.P.R.A. § 6153.

required, failing to provide a psychiatric evaluation, not scheduling follow up appointments, and failing to provide adequate medication.

On April 4, 2016, Dr. Lopez filed a *Motion for Summary Judgment* (Docket No. 66) claiming that EMTALA applies exclusively to hospitals that participate in the Medicare program and that it does not create a cause of action against physicians. Dr. Lopez further avers that Plaintiffs and Defendants lack complete diversity. Thus, Dr. Lopez argues the Court lacks grounds for jurisdiction.

On June, 24, 2017, Plaintiffs filed a *Response in Opposition to Motion for Summary Judgment* (Docket No. 91). Plaintiffs specify that their claims against the individual physicians, Dr. Lopez and Dr. Acosta, are brought under Article 1802 and 1803 of the Puerto Rico Civil Code. Plaintiffs aver that supplemental jurisdiction over these claims should be invoked as they have a valid EMTALA claim as well as diversity jurisdiction.

On April 4, 2016, APS Healthcare Inc. filed a *Motion for Summary Judgment* (Docket No. 68). Defendant APS claimed that they were not subject to the EMTALA statute as they are a Managed Behavioral Healthcare Organization and not a hospital. On June 26, 2016, Plaintiffs filed a *Response in Opposition to Motion for Summary Judgment* (Docket No. 94) where they conceded that Defendant APS is not a hospital and not subject to the EMTALA provisions.

On April 4, 2016, Defendant Pavia filed a *Motion for Summary Judgment* (Docket No. 71). Dr. Acosta-Guillot, Dr. Lopez, and APS Healthcare Inc. all joined Pavia's motion. Defendant Pavia claimed that they complied with the screening, stabilization, and transfer provisions of EMTALA. Furthermore, Defendant Hospital Pavia avers that EMTALA allows state law to govern inherited causes of action and thus the survivorship claim should be summarily dismissed since Plaintiffs did not join Vanessa Delgado Caraballo and Juan Delgado-Gonzalez, who are indispensable parties under Puerto Rico law. Defendant Pavia further avows that minors B.O.G.D. and M.G.D. were both domiciled in Puerto Rico and thus there is

no jurisdiction under 28 U.S.C. §1332. Defendant Pavia concludes that, since the Court lacks original jurisdiction, it should dismiss all claims under supplemental jurisdiction.

On June 20, 2016, Plaintiffs filed a *Response in Opposition to Motion for Summary Judgment* (Docket No. 87) and stated that, although Defendant Hospital Pavia screened Patient, the screening provided was not consistent with that of other similarly situated patients. Plaintiffs claim that although EMTALA does allow state law to govern inherited causes of action, the law in Puerto Rico permits survivorship actions to be brought by any heir and does not require that all heirs be included in the action.

On August 8, 2016, Defendant Hospital Pavia filed a *Reply to response to Motion to Summary Judgment* (Docket No. 117) requesting that Plaintiffs' EMTALA claim be dismissed since they admitted that Mrs. Caraballo was indeed screened at Hospital Pavia. Defendant avers that state jurisprudence regarding the issue has stated that all members of an estate are indispensable parties whenever the estate is party to a claim. Defendant also claims that even though diversity jurisdiction is sought in the alternative, not even the minors B.O.G.D. and M.G.D. can claim diversity as they only lived in Massachusetts temporarily.

### III.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325 (1986).  Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts," as well as that it is "entitled to judgment as a matter of law."  *Veda-Rodriguez v. Puerto Rico*, 110 F.3d 174, 179 (1st Cir. 1997).  A fact is "material" where it has the potential to change the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A fact is "genuine" where a reasonable jury could return a verdict

for the nonmoving party based on the evidence. *Id.* Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.*

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortes-Irizarry v. Corporación Insular,* 11 F.3d 184, 187 (1st Cir. 1997).

At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959-60 (1st Cir. 1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.,* 530 U.S. 133, 150 (2000)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51, 106 S.Ct. 2505 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.,* 369 U.S. 470, 473, 82 S.Ct. 486 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman-Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781 (1982)("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also Dominguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 433 (1st Cir. 2000)(finding that "determinations of motive and intent . . . are questions better suited for the jury"). "As we have said many times, summary judgment is not a substitute for the trial of disputed factual issues." *Rodríguez v. Municipality of San Juan,* 659 F.3d 168, 178-179 (1st Cir. 2011)(internal quotations and citations omitted). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala-Gerena v. Bristol Myers-Squibb Co.,* 85 F.3d 86, 95 (1st Cir. 1996). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] . . . we will not draw

*unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir. 2010)(internal quotations and citation omitted). Moreover, "we afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Tropigas De P.R. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)(internal citations omitted).

Further, the Court will not consider hearsay statements or allegations presented by parties that do not properly provide specific reference to the record. See *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").[3] *See also* D.P.R. Civ. R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to the record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir. 2001)(finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate).

If a defendant fails to file an opposition to the motion for summary judgment, the district court may consider the motion as unopposed and disregard any subsequently filed opposition. *Velez v. Awning Windows, Inc.,* 375 F.3d 35, 41 (1st Cir. 2004). Furthermore, the district court must take as true any uncontested statements of fact. *Id.* at 41-42; *see* D.P.R.R. 311.12; *see Morales,* 246 F.3d at 33 (**"**This case is a lesson in summary judgment practice …. [P]arties ignore [Rule 311.12] at their own peril, and … failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies deeming the facts presented in the movant's statement of undisputed facts admitted.")(internal citations and quotations omitted)**;** *see also Euromodas, Inc. v. Zanella , Ltd.,* 368 F.3d 11, 14-15 (1st Cir. 2004).

---

[3] D.P.R. Civ. R. 56(b), often referred to as the anti-ferret rule, requires the party moving for summary judgment to submit a "separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact." Similarly, the non-moving party is required to submit a counter-statement "admit[ing], deny[ing] or qualify[ing] the facts by reference to each numbered paragraph in the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by record citation." D.P.R. Civ. R. 56(c).

However, this does not mean that summary judgment will be automatically entered on behalf of the moving party when there is no opposition by the non-moving party, as the court "still has the obligation to test the undisputed facts in the crucible of the applicable law in order to ascertain whether judgment is warranted." *See Velez,* 375 F.3d at 42. *See also Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 25 (1st Cir. 2006) (when scrutinizing an unopposed motion for summary judgment, "the district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate.") (citing *Mullen v. St. Paul Fire and Marine Ins. Co.*, 972 F.2d 446, 452 (1st Cir. 1992) and *López v. Corporación Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir. 1991)); *Fontanez-Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 55 (1st Cir. 2006) (citing *Torres–Rosado v. Rotger–Sabat*, 335 F.3d 1, 4 (1st Cir. 2003)).

## IV.   ANALYSIS

*APS Healthcare Inc.'s liability under EMTALA*

EMTALA was enacted by Congress to ensure that hospitals would not turn away or discharge patients that could not afford healthcare. *See Correa v. Hosp. San Francisco,* 69 F.3d 1184, 1189-90 (1st Cir. 1995). EMTALA established minimal screening and stabilization requirements to prevent the practice of patient dumping. *See Reynolds v. Maine General Health,* 218 F.3d 78, 83-84 (1st Cir. 2000). The statute covers hospitals that enter into provider agreements, such as the federal Medicare program. *See* 42 U.S.C. § 1395 (e)(2). It is important to note that "EMTALA does not apply to all health care facilities; *it applies only to participating hospitals with emergency departments*." *Rodríguez v. American International insurance Co.,* 402 F3d 45, 49 (1st Cir. 2005) (emphasis ours).

APS Healthcare provides outpatient services and does not provide inpatient or emergency hospital services. Additionally, Plaintiffs conceded that "APS Clinics Caguas is not a hospital and *not subject to the EMTALA provisions*". *See Plaintiffs Response In Opposition to Defendant APS Healthcare Motion for Summary Judgment* Docket No. 94 Pg. 8 (emphasis ours). Accordingly, based on the uncontested facts

and Plaintiffs' own admission, the Court hereby **DISMISSES WITH PREJUDICE** Plaintiffs' EMTALA claim against APS Healthcare Inc.

*Indispensable Party*

Prior to reaching the merits of Plaintiff's claim, the Court must determine whether Plaintiffs failed to join an indispensable party to the suit. An indispensable party is one "(1) without whom the court cannot accord complete relief; or (2) who claims an interest relating to the subject of the action and is situated such that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest; or (3) whose claimed interest in the subject of the action would leave defendants subject to substantial risk of incurring multiple or otherwise inconsistent obligations." *Cruz–Gascot v. HIMA–San Pablo Hosp. Bayamón,* 728 F.Supp.2d 14, 26–27 (D.P.R. 2010) (citing Fed. R. Civ. P. 19(a)). After taking all of this into account, "[i]f the court finds that party is anything less than indispensable, the case proceeds without her. If, on the other hand, *the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case*". *Jiménez v. Rodríguez–Págan,* 597 F.3d 18, 23 (1st Cir. 2010) (referring to *B. Fernandez & Hnos, Inc. v. Kellogg USA, Inc.,* 516 F.3d 18, 23 (1st Cir. 2008)) (emphasis ours).

Decedent's estate is compiled of Yomayra Delgado Caraballo, Juan Ramon Ramon Delgado Caraballo, Vanessa Delgado Caraballo, and widower Juan Delgado Gonzalez. However, the instant EMTALA claim was brought by Yomayra and Juan Ramon. There is no doubt that the absent heirs interest might be affected or prejudiced by the decision reached by this Court. Additionally, any relief acquired through the survivorship claim may not be adequate and the absent heirs may be compelled to file a state suit if they were not in accord with the remedy given. Notwithstanding, Plaintiffs claim that standing Puerto Rico law has determined that individual heirs can individually bring suits in name of the estate. The Court strongly disagrees and explains.

The First Circuit recently noted that the Puerto Rico District Court is split on whether joinder of all heirs to a survivorship claim under Puerto Rico law is necessary. *See Cason v. Puerto Rico Elec. Power Authority*, 770 F. 3d 971 (1st Cir. 2014)[4]. The first view is that all heirs to an estate are not indispensable since any judgement in favor of one of the heirs benefits all of them, "while any adverse judgment is only prejudicial to the individual or individuals who filed the lawsuit". Betancourt v. U.S., 2014 WL 5846745 (citing *inter alia, Cintrón v. San Juan Gas,* 79 F.Supp.2d 16 (D.P.R. 1999) (Casellas, J.); *Martínez-Álvarez v. Ryder Mem'l Hosp.,* Civ. No. 09–2038(JP), 2010 WL 3431653, at *15 (D.P.R. Aug. 31, 2010) (Pieras, J.); *Ruiz–Hance v. P.R. Aqueduct & Sewer Auth.,* 596 F.Supp.2d 223, 229–30 (D.P.R. 2009) (Pérez–Giménez, J.); *Arias–Rosado v. González–Tirado,* 111 F.Supp.2d 96, 99 (D.P.R. 2000) (Gierbolini, J.)).

"The contrary view focuses on 'the unitary nature of the succession, which all of the heirs together represent ....,' reasoning that the heirs to a succession are indispensable because 'their interests could be prejudiced by the proceedings to which they were not parties.'" *Id.* (citing, *inter alia, Cruz–Gascot,* 728 F.Supp.2d 14 (Besosa, J.); *Pagán–Ortíz v. Carlo–Domínguez,* 977 F.Supp.2d 106 (D.P.R. 2013) (Gelpí, J.)); *see also Reyes–Ortíz v. HIMA San Pablo–Bayamón,* No. 11–1273(PAD) (D.P.R. June 16, 2014) (Delgado–Hernández, J.); and *Jiménez–Franceshini,* No. 12–1504 (ADC) (D.P.R. March 31, 2014) (Delgado–Colón, J.).

If one were to side with the first view, then "it appears that the federal suit here is something of a free shot for the non-diverse heirs. Success inures to their benefit while failure is costless". *Jimenez v. Rodriguez-Pagan*, 597 F. 3d 18 (1st Cir. 2010). However, the First Circuit in *Jimenez* was not convinced

---

[4] *Compare, e.g., Reyes–Ortíz v. HIMA San Pablo–Bayamón,* No. 11–1273 (D.P.R. June 16, 2014); *Segura–Sanchez v. Hosp. Gen. Menonita, Inc.,* 953 F.Supp.2d 344, 348 (D.P.R.2013); *Casillas–Sanchez v. Ryder Mem'l Hosp., Inc.,* No. 11–2092, 2013 WL 3943517, at *1 (D.P.R. July 30, 2013); *Pagán–Ortíz v. Carlo–Dominguez,* 977 F.Supp.2d 106 (D.P.R.2013); *Pino–Betancourt v. Hosp. Pavía Santurce,* 928 F.Supp.2d 393, 396 (D.P.R.2012), (cases holding that all heirs are required and indispensable parties to a wrongful death suit asserting a survivorship action), with *Rodríguez v. Integrand Assur. Co.,* No. 10–1476, 2011 WL 3439260 at *3 (D.P.R. Aug. 5, 2011); *Muñiz–Mercado v. Hosp. Buen Samaritano,* No. 09–1829, 2010 WL 923 at *1 (D.P.R. Oct. 26, 2010); *Martínez–Alvarez v. Ryder Mem'l Hosp., Inc.,* No. 09–2038, 2010 WL 3431653 at *18 n. 9 (D.P.R. Aug. 31, 2010); *Ruiz–Hance v. Puerto Rico Aqueduct & Sewer Auth.,* 596 F.Supp.2d 223, 229–30 (D.P.R.2009); *Rodríguez–Rivera v. Rivera Ríos,* No. 06–1381, 2009 WL 564221, at *3. (D.P.R. Mar. 5, 2009); *Arias–Rosado v. González Tirado,* 111 F.Supp.2d 96, 99 (D.P.R.2000); *Cintrón v. San Juan Gas, Inc.,* 79 F.Supp.2d 16, 19 (D.P.R.1999) (cases holding that survivorship actions can be brought on behalf of the estate without joining all heirs as parties);.

that this represented the state of Puerto Rico law regarding the issue and decided that it was not equipped to resolve said issue due to the "unsettled state of governing Puerto Rico law." *Id*. at 26. Nonetheless, the Court in *Jimenez* entertained a hypothetical scenario where a plaintiff in federal court secured monetary damages that were less than they originally sought and questioned whether that would "constitute a successful judgment sufficient to bind the non-diverse heirs . . . or . . . an adverse judgment that would leave those heirs free to double down in the second suit[.]"*Id.* at 27. There being no binding resolution, the Court must then go with the most persuasive and reasonable legal judgment.

There is no doubt that a suit brought only by one heir in representation of the estate may affect the absent heirs of said estate. There exists no such thing as a free shot in bringing a suit against a defendant. Further, "a 'sucesion' is not an entity distinct and separate from the persons composing it" and "does not have existence by itself as a juridical person or entity." *Pino-Betancourt v. Hospital Pavia Santurce* 928 F. Supp. 2d 393 (D.P.R. 2013) (citing *Cruz–Gascot* 728 F.Supp.2d at 19). The Court then agrees with the latest case law in this District Court that a lawsuit brought by only one or some of the heirs could prejudice the rights of others in the succession, rendering such parties necessary to the survivorship action. *See Cruz–Gascot,* 728 F.Supp.2d at 24–26; *Gonzalez v. Presbyterian Community Hosp., Inc.* 103 F. Supp. 3d 198 (D.P.R. 2015); *Betancourt*, 2014 WL 5846745; *Pino-Betancourt,* 928 F. Supp. 2d at 393. Moreover, and most importantly, the Puerto Rico Supreme Court has affirmed the indispensability of all heirs to an estate when the same is a party to a claim. *See Vilanova et al. v. Vilanova et al.,* 184 D.P.R. 824, 839–840 (2012) ("Since the beginning of the past century, the Court has left it completely clear that an estate is not a legal entity separated from the members that compose it. Then, for an estate to be able to sue or substitute a deceased plaintiff, *all members of the estate must be brought to the suit*".) Furthermore, the Court in *Vilanova* stated that members to an estate are indispensable parties since without their presence the claim cannot be attended since any sentence against or in benefit of the estate will undoubtedly affect their interests. *Id* at 844.

Notwithstanding that Plaintiffs are arguing against standing Puerto Rico law, they still have one last gasp attempt at maintaining the survivorship claim. "[I}f the court determines that someone is a necessary party under Rule 19(a) but one that cannot be feasibly joined, then the court proceeds under Rule 19(b) to determine 'whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.'" *Id.* (citing Fed. R. Civ. P. 19(b); *In re Cambridge Biotech Corp., 186* F.3d 1356, 1372 (Fed.Cir.1999)). To answer that question, the district court must consider four factors specified in the Rule:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Jimenez,* 597 F.3d at 25 (citing Fed. R. Civ. P. 19(b)). The Court discusses these factors *seriatim*.

One cannot expect that absent heirs would not suffer the consequences of the dismissal of the survivorship claim. If the survivorship claim is dismissed with prejudice, the absent heirs would not be able to bring their own federal claim representing the estate against the same particular defendant. Furthermore, allowing the survivorship claim to continue would open up Defendants of possibly having to incur in liability both in the federal and state court. Thus, if the decision reached by this Court affects the heirs' ability to bring a suit in favor of the estate, a suit brought by other heirs in representation of said estate does in fact deprive them of a certain right. Specifically to this case, the only remaining federal claim under EMTALA is the survivorship claim and deciding the merits of said claim without permitting all the heirs of the estate to exercise their rights would be unfair to the absent heirs and also to the Defendants.

The Court suspects Plaintiffs seek to attain remedy through the EMTALA statute in an attempt to attain federal jurisdiction. Based on the present facts of the case, Plaintiffs claim appear more like medical malpractice rather than a failure to screen under EMTALA. Thus, dismissing Plaintiffs survivorship claim

would not adversely affect them since they have similar available remedies for their survivorship claim in state court. Plaintiffs would also be able to refile their claim in the federal court with all the indispensable parties. Consequently, the survivorship claim brought by plaintiffs under EMTALA is **DISMISSED WITHOUT PREJUDICE**.[5] We look now to see if diversity jurisdiction exists for the Court to attain supplemental jurisdiction over the personal claims brought by Plaintiffs.

*Diversity Jurisdiction*[6]

Plaintiffs claim that they have attained diversity jurisdiction since minors B.O.G.D. and M.G.D. lived in Massachusetts for a few years for educational purposes. In deciding whether diversity jurisdiction is attained in the present case, this argument is irrelevant. "Diversity jurisdiction exists only when there is *complete* diversity, that is, when no plaintiff is a citizen of the same state as any defendant." *Gabriel v. Preble,* 396 F.3d 10, 13 (1st Cir. 2005) (referring to *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806)); *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP,* 362 F.3d 136, 139 (1st Cir. 2004); see also *Connectu LLC v. Zuckerberg,* 522 F.3d 82, 91 (1st Cir. 2008). There is no doubt in this case that diversity jurisdiction fails since Plaintiffs Yomayra Delgado Caraballo and Juan Ramon Delgado Caraballo are both from Puerto Rico as are Defendants Hospital Pavia, APS Healthcare, Dr. Acosta, and Dr. Lopez.

*Local Law Claims*

As no federal claim survives and there is no diversity jurisdiction, all that remain are supplemental state law claims under Articles 1802 and 1803 of the Puerto Rico Civil Code.  Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction" when "all claims over which it has original jurisdiction" have been "dismissed." *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726

---

[5] Even though the parties made no such argument, the Court emphasizes that the Eerie doctrine would not affect the ultimate outcome of this case. Whether the indispensable party issue is a matter that should be governed by federal procedural rules or substantive state law, the Court would reach the same determination.
[6] A Motion to Strike a Post Summary Judgment Affidavit (Docket No. 93-12) regarding facts about the citizenship of minors B.O.G.D and M.G.D is **DENIED as MOOT**.

(1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Rodríguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir. 1995) (stating "[t]o be sure, the exercise of supplemental jurisdiction in such circumstances is wholly discretionary."). Here, all of Plaintiff's local law claims arise from the same set of alleged acts as Plaintiff's federal law claims. Since all pertinent federal claims have been dismissed and in order to conserve judicial resources, the Court rejects Plaintiff's invitation to exercise its discretionary supplemental jurisdiction and **DISMISSES WITHOUT PREJUDICE** the local law claims.

## V.   CONCLUSION

For the reasons provided above, the Court **GRANTS** Hospital Pavia Inc.'s Motion for Summary Judgment (Docket No. 71). Plaintiffs' survivorship claim against Hospital Pavia under EMTALA is **DISMISSED WITHOUT PREJUDICE**; Plainitffs' EMTALA claim against APS Healthcare Inc. is **DISMISSED WITH PREJUDICE**; and the rest of the Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 31st day of March, 2017.

S/ DANIEL R. DOMÍNGUEZ<br>
DANIEL R. DOMÍNGUEZ<br>
U.S. District Judge